**UNITED STATES of America ex rel. John LUSTERINO, Petitioner,**

v.

**Hon. Edwin DROS, Warden of Manhattan House of Detention for Men, New York City, New York, Respondent.**

**No. 66 Civ. 2809.**

United States District Court
S. D. New York.

Oct. 17, 1966.

Supplemental Memorandum and Order
Nov. 21, 1966.

John Lusterino, pro se, H. Richard Schumacher, New York City, assigned counsel, for petitioner.

J. Lee Rankin, Corp. Counsel of City of New York, Frank S. Hogan, Dist. Atty., Irwin Rochman, Asst. Dist. Atty., New York County, of counsel, for respondent.

## MEMORANDUM

FRANKEL, District Judge.

Petitioner was indicted in the Spring of 1955 for robbery in the first degree. His first trial ended when the jury was unable to reach a verdict. A second jury found him guilty on May 23, 1957, and he was sentenced to a prison term of from 10 to 15 years. The Appellate Division affirmed on October 21, 1958. People v. Lusterino, 6 A.D.2d 1037, 178 N.Y.S.2d 1008 (1st Dep't). On June 19, 1961, while the state appellate process remained uncompleted, the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, was announced. Thereafter, petitioner sought leave to appeal to the New York Court of Appeals, urging that (1) unlawfully seized evidence had been used against him, contrary to *Mapp*, and (2) admissions to a police officer, after his arrest and during confinement in jail, had been allowed improperly to be given in evidence.

In a certificate dated July 12, 1962, superseding one of April 10, 1962, Judge Fuld ruled that the application was timely but that leave to appeal should not be granted because there had been no objection at trial to either item of allegedly unlawful evidence. Certiorari was denied on March 18, 1963. 372 U.S. 947, 83 S.Ct. 942, 9 L.Ed.2d 972.

In February of 1965, petitioner sought habeas corpus in the District Court for the Northern District of New York. As grounds for the writ, he re-asserted the two contentions noted above. In addition, he argued that his admissions had been received without the preliminary judgment of voluntariness required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). On February 18, 1965, Chief Judge Foley denied the petition without a hearing. As to the *Mapp* issue, he noted that then recent decisions of our Court of Appeals (see infra), holding that such objections could not be deemed to have been "waived" by failure to present them in a trial antedating *Mapp*, were pending on petitions for certiorari, so that the effect of "such failure [was] still an open question in this Circuit." On the question posed under Jackson v. Denno, he pointed out that state coram nobis was available in accordance with People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965). Accordingly, he concluded:

> "In the interests of comity * . * * and for good order to lessen the confusion at times rampant in this field, the petitioner should first apply to the State Courts for relief. There seems to be clear right to have the alleged coerced admissions claim heard, and if the petitioner were to prevail on that issue the need for federal intrusion in the matter would end. The illegal search and seizure is still an open question in the federal system. when there is failure to object, and the State Courts may take a new look at these problems in view of the Henry v. State of Mississippi [379

U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965)] ruling."

Proceeding with the intermittent assistance of unpaid counsel, petitioner managed by March of this year, over a year after the decision of Chief Judge Foley, to file a state petition for coram nobis. (The state authorities, conceding in response to the petition that the *Huntley* hearing envisaged by Chief Judge Foley was appropriate, had apparently done nothing in the interim to afford that adequate state remedy.) On June 2, 1966, Mr. Justice Marks held that all but the Jackson v. Denno objections were unavailable for failure to interpose them at trial. He ruled, however, that there should be a *Huntley* hearing, and ordered petitioner produced for that purpose on June 13, 1966. Petitioner was accordingly brought to New York City, but the scheduled hearing was adjourned to September. Petitioner now asserts that there will be further delay until some time next year, and respondent says nothing to the contrary.

Being confined now within this District pending the long-awaited *Huntley* hearing, petitioner has applied to this court for habeas corpus on the grounds urged some 20 months ago before Chief Judge Foley. Respondent, tendering nothing about the merits of these claims, deems it enough to argue that petitioner should wait some more for his "adequate" state remedy. Petitioner suggests hopefully that his sentence is likely soon to expire, mooting his federal contentions. To this respondent offers the cool assurance that the sentence is still a long way from completion, so that petitioner has plenty of time to stand by for the promised state proceeding. And it is common ground that the *Mapp* claim cannot be heard at all in the state for the reason Judge Fuld stated over four years ago.

The foregoing chronology is enough to demonstrate that this court should move with all reasonable speed to hear at least petitioner's assertions under Mapp v. Ohio. This would be so

even if nothing but the passage of time touched the decision of Chief Judge Foley almost two years ago. For it is clear that there are sharp limits to the sacrifices men must make upon the altar of comity. In cases of much briefer delay, it has been "recognized that inordinate delay in the adjudication of an asserted post-conviction remedy may very well work a denial of due process cognizable in the federal court." Smith v. State of Kansas, 356 F.2d 654, 656 (10th Cir. 1966). See also Harvey v. State of Mississippi, 340 F.2d 263, 268 (5th Cir. 1965); cf. Williams v. Holman, 239 F.Supp. 173 (M.D.Ala.1965).

■ Moreover, circumstances have changed since Chief Judge Foley rendered his decision. It remains true that petitioner's *Mapp* claims cannot be raised in the state's courts. People v. Spero, 25 A.D.2d 882, 270 N.Y.S.2d 254 (2d Dep't 1966). Thus, he is surely exhausted there even if his unsuccessful effort to appeal on this issue were not exhaustion enough. United States ex rel. West v. La Vallee, 335 F.2d 230, 231 (2d Cir. 1964). Meanwhile, it has ceased to be an "open question in this Circuit" that this contention is available on federal habeas corpus. Ibid., cert. denied sub. nom. La Vallee v. Carafas, 381 U.S. 951, 85 S.Ct. 1798, 14 L.Ed.2d 725 (1965); United States ex rel. Carafas v. La Vallee, 334 F.2d 331 (2d Cir. 1964), cert. denied, 381 U.S. 951, 85 S.Ct. 1798, 14 L.Ed.2d 725 (1965); United States ex rel. Wilson v. Murphy, 335 F.2d 550 (2d Cir. 1964), cert. denied sub nom. La Vallee v. Carafas, 381 U.S. 951, 85 S.Ct. 1798, 14 L.Ed.2d 725 (1965). There is, then, no reason to keep the federal forum locked against petitioner when there is no other place where he can be heard on this constitutional issue.

The fact that he could conceivably succeed in a *Huntley* hearing makes no difference. There is no need to say how such a situation would be handled if the state remedy were being afforded with somewhat less deliberate speed. It is

sufficient to hold that the question which can be heard only here should no longer be postponed because a state ruling on a different subject is expected at some future time.

Indeed, there might be force in the contention that the problem under Jackson v. Denno should also be heard here in view of the lengthy and unexplained delays of petitioner's *Huntley* hearing. On the other hand, that subject is a distinct and separate one. It is in its nature peculiarly appropriate for state adjudication. Moreover, without knowing now whether there is substance in the claims under *Mapp*, this court faces at least the possibility that the hearing of these claims will result in petitioner's release or a new trial without regard to the merits of the *Huntley* subject. Accordingly, that subject will be excluded from the hearing to be ordered in this decision unless petitioner can make some showing in support of a contrary view. Of course, if this court's hearing of the *Mapp* point results in rejection of petitioner's claim, and if the state's *Huntley* hearing does not ensue promptly thereafter, this court will remain open for such further relief as may then be appropriate.

A word should be added on petitioner's remaining argument—that evidence of his admissions was received in violation of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.C. 1758, 12 L. Ed.2d 977 (1964). As made in the papers, the argument is simply that. Since petitioner's trial and state appeals were ended before *Escobedo*, the point would appear to be foreclosed by Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Again, however, petitioner may be able to show something more on this subject; if he does, this court's hearing will embrace such facts as he can demonstrate to be potentially material.

Subject to the possible modifications and expansions suggested above, this court now orders that petitioner be produced for an evidentiary hearing on

his claims under Mapp v. Ohio. Allowing time for suitable preparation by both the State and petitioner's assigned counsel, hereinafter appointed, the hearing will be scheduled to begin on or about November 10, 1966. Counsel and the court will consult within two weeks from the date of this order to fix a day certain.

H. Richard Schumacher, Esq., 80 Pine Street, New York City, who appears to have rendered many hours of devoted and unpaid service to petitioner in the past, is assigned as counsel to represent petitioner in this proceeding.

The foregoing constitutes the order of the court. No settlement is necessary.

## SUPPLEMENTAL MEMORANDUM AND ORDER

■ This proceeding ends now with a whimper that gives a macabre ring to much of what has gone before. On the eve of the hearing scheduled pursuant to this court's order of October 17, 1966, having strung over exhausting months the argument that petitioner should exhaust his state remedies, the State announces its concession that there is no ground whatever for opposing on the merits petitioner's claim that his conviction was procured in violation of the constitutional safeguards defined by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). It follows, of course, that the court will issue forthwith an order granting petitioner either a prompt retrial or his freedom. And it is obvious that nothing written now can cure what may prove to have been many months of baseless delay in ending petitioner's imprisonment. There is point, nevertheless, in publishing a brief record of this painful denouement; for we work in the hope that the law reports sometimes teach useful lessons.

■ Properly administered, the rule barring federal habeas corpus until adequate state remedies have been exhausted implements cherished values of our federal system. The rule withers to a grisly ritual when it is employed for nothing more than delay in the vindication of constitutional rights. When responsible state officials assert that the federal court must stay its hand until some course of state procedure has been run, the assertion must surely be deemed to imply a representation that there are things of substance to be appraised by the state's tribunals. Where, as in this case, there is no basis for such a representation, the duty of the state authorities is clear: they must follow the Constitution that binds us all and see to it that unquestioned and unquestionable rights are speedily enforced.

■■ As is true of many other fundamentals, it is both trite and necessary to reiterate from time to time that the prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Without attempting at this time to apportion blame (this case has apparently passed across the desks of at least several prosecutors), we may express the devout hope that spectacles like this one will be avoided. Before they invoke the exhaustion doctrine, the state's lawyers, appearing as officers of this court, will be expected to satisfy themselves that there is at least colorable ground for believing there is something real to exhaust.

The court, like petitioner, is indebted to H. Richard Schumacher, Esq., for his able and devoted service without pay.

The writ is sustained unless, within ten days from today, the State on its own motion vacates the judgment of conviction, reinstates petitioner's plea of not guilty, and schedules an early retrial, failing which petitioner will be discharged from custody.

It is so ordered.