452

U. S. A. ex rel. Dominick SABELLA, Petitioner,

v.

Hon. H. W. FOLLETTE, Warden, Green Haven State Prison, Stormville, N. Y., Respondent.

No. 69 Civ. 5047.

United States District Court,
S. D. New York.

Aug. 3, 1970.

Dominick Sabella, pro se.

Louis J. Lefkowitz, Atty. Gen., for respondent.

OPINION

EDELSTEIN, District Judge.

Petitioner, Dominick Sabella, was indicted for first degree robbery in February 1964. Thereafter, petitioner had two trials in the Suffolk County Court

of New York on that indictment. The first, from June 22 to July 9, 1964, ended with the jury unable to arrive at a unanimous verdict with regard to Sabella. The second trial, from November 16 to 19, 1964, resulted in conviction. Subsequently, the Appellate Division reversed and ordered a new trial on the ground that petitioner had not been afforded opportunity to cross-examine a key prosecution witness.[1] On or about February 16, 1966, a superseding indictment was returned against petitioner for reasons not specified in the papers.[2] Petitioner's third trial, also in the Suffolk County Court, from March 9 to 26, 1966, ended in petitioner's conviction. On or about April 22, 1966, a sentence of 15 to 30 years was imposed for that conviction, to run concurrently with a sentence imposed on that same date of 2½ to 5 years for an apparently unrelated offense.[3] Petitioner's robbery conviction was affirmed without opinion by the Appellate Division [4] and, in turn, unanimously by the Court of Appeals.[5]

Following the affirmance in the Appellate Division, but prior to that by the Court of Appeals, petitioner filed a petition for a writ of error *coram nobis* in the Suffolk County Court in or about the middle of 1967.[6] Petitioner alleged two grounds: (1) that defendant's retained counsel during his second trial on the robbery was threatened with disbarment through an intermediary of the District Attorney which allegedly caused his attorney to rest prematurely defendant's case; and (2) that there were simultaneously present before the Grand Jury on February 16, 1966, three police officers "who gave testimony in each other's presence." On July 20, 1967, the Suffolk County Court denied petitioner's *coram nobis* application. Petitioner then sought to appeal that denial to the Appellate Division, and on September 14, 1967, the Appellate Division assigned Oscar Bloom, Esq. to assist petitioner's appeal. The brief for this appeal was not filed until two years later, on or about September 4, 1969. Presumably out of an increasing sense of frustration and impatience with assigned counsel's lengthening delay in perfecting his appeal, petitioner, on or about July 10, 1969, applied to the Supreme Court of Dutchess County for a writ of habeas corpus. That application raised the two grounds set forth in his original *coram nobis* petition, together with the additional charge of inadequate assistance of counsel to perfect his *coram nobis* appeal. The habeas corpus application was denied on August 28, 1969. On November 19, 1969, petitioner filed the present application for a writ of habeas corpus "pursuant to 28 U.S.C. § 2241(D)." [7] Shortly thereafter, on December 1, 1969, the Appellate Division affirmed the Suf-

---

1. 24 A.D.2d 885; 264 N.Y.S.2d 642 (Nov. 1965).

2. Petitioner states only that "[P]rior to the commencement of petitioner's third trial, assigned counsel submitted a 'Motion to Suppress' illegal evidence on the original indictment * * *. After a discussion of the 'Motion to Suppress' in the trial judge's chambers, without the presence of petitioner, and with no decision having been reached, an alleged superseding indictment * * * was found." (Petition, third of unnumbered pages)

3. Petitioner was convicted on January 5, 1966, for the crimes of issuing a fraudulent check and grand larceny. Sentence for this offense was imposed at the same time as for the robbery conviction—viz.

April 22, 1966. Petitioner's application is based upon the robbery conviction.

4. 28 A.D.2d 647, 282 N.Y.S.2d 202 (May 1, 1967).

5. 21 N.Y.2d 963, 289 N.Y.S.2d 991, 237 N.E.2d 239 (April 10, 1968).

6. A copy of that petition sworn to on May 9, 1967, but bearing a stamp entitled "Correspondence Department" and dated July 2, 1967, was submitted to this court together with other papers.

7. Title 28, Section 2241, the jurisdictional counterpart of Title 28, Section 2254, does not presently contain a subsection "(D)". However, in view of the fact that petitioner is proceeding without counsel, the court disregards the minor imprecision.

folk County Court's denial of the *coram nobis*.[8]

### Exhaustion of Remedies

 On the facts presented, the threshold determination is whether under 28 U.S.C. § 2254, the applicant has "exhausted all the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."[9] The availability of state remedies is determined with reference to the facts existing at the time the application is filed;[10] for our purposes, the measuring date becomes November 19, 1969.[11] As of that date, the time in which to appeal the denial of his state habeas corpus application had expired;[12] thus, as to that petition, circumstances existed rendering such process ineffective. However, the same cannot be said of petitioner's *coram nobis* application. On November 19, 1969, that appeal was still pending in the Appellate Division, which decision was not rendered until December 1, 1969, as of which date petitioner still had thirty days in which to seek leave to appeal to the Court of Appeals.[13] Thus, as of November 19, 1969, —and for approximately 43 days thereafter—petitioner had not exhausted his state remedies, and, on this basis alone, the court can dismiss the instant petition.[14] However, the doctrine of exhaustion of state remedies is bottomed on considerations of comity and is not jurisdictional in nature.[15] The presence of compelling factors have, on occasion, warranted departure from otherwise rigid application of the doctrine.[16] Such circumstances exist here. On or about January 1, 1970, the thirty-day period in which Sabella might have sought leave to appeal his *coram nobis* to the Court of Appeals expired. That time limit is jurisdictional, inflexible, and binding on the state courts.[17] At this point, with respect to *coram nobis*, circumstances have rendered state court corrective processes unavailable; to remit petitioner to those remedies would be a hollow exercise in futility. The fact that New York's highest court would now be foreclosed from hearing that appeal sounds the death knell to the otherwise essential considerations of comity. And in the absence of factors which would persuade this court that petitioner deliberately bypassed these state court procedures,[18] the court

8. Delay in this court's consideration was due to the need to obtain several important documents, including trial transcripts, which were not among the papers originally submitted.

9. See 28 U.S.C. § 2254.

10. Fay v. Noia, 372 U.S. 391, 435, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

11. Although the petition was sworn to on September 2, 1969, it was not filed with the Clerk of the Southern District of New York until November 19. No explanation for the time lag appears in the papers.

12. New York C.P.L.R. §§ 7011, 5513.

13. New York Code Crim.P. §§ 517, 519(6), 521.

14. *See, e. g.*, United States ex rel. Presenzano v. Deegan, 294 F.Supp. 1347, 1349 (S.D.N.Y.1969).

15. Fay v. Noia, *supra*, 372 U.S. 434–435, 83 S.Ct. 822.

16. *E. g.*, United States ex rel. Johnson v. Rundle, 286 F.Supp. 765, 767 (E.D.Pa. 1968); United States ex rel. Hill v. Deegan, 268 F.Supp. 580, 584 (S.D.N.Y. 1967); United States ex rel. Lusterino v. Dros, 260 F.Supp. 13, 15–16 (S.D.N.Y. 1966).

17. People v. Puchner, 277 A.D. 9, 97 N.Y.S. 2d 671 (1950); People v. Stottlemeyer, 9 A.D.2d 1022; 194 N.Y.S.2d 101 (1959).

18. The standards for finding a deliberate by-pass or waiver are set out in Fay v. Noia, *supra*, 372 U.S. 438–439, 83 S.Ct. 822 and adopt the waiver test classically defined in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Petitioner's repeated appeals and petitions to the New York courts, together with the increasingly long wait for the filing of his *coram nobis* appellate brief, persuade the court that defendant's resort to the federal court was not intended as a waiver of those state processes then

finds that petitioner has exhausted his state court remedies within the meaning of 28 U.S.C. § 2254.[19]

### Claims Asserted by Petitioner

Petitioner's application is predicated on three grounds. In order, these are: (quoted in full)

"(A) Petitioner has been denied the adequate and competent assistance of assigned counsel to perfect an appeal in the Appellate Court;

"(B) That retained counsel during petitioner's second trial on the robbery was threatened with disbarment if he continued with the trial;

"(C) That there were unauthorized persons present in the Grand Jury room when on February 16, 1966, the superseding indictment was found."

### Inadequate Representation by Counsel in Petitioner's Coram Nobis Appeal

■ Petitioner's claim of inadequate assistance of counsel for his *coram nobis* appeal is bottomed on the following contentions: (1) that it took assigned counsel two years from the date of his assignment to file the appellate brief, and then only when prodded by petitioner's state habeas application; (2) that counsel failed to contact certain witnesses for possible affidavits in connection with that appeal; and (3) that the appeal brief prepared by counsel was practically identical with petitioner's origi-

nal application, prepared without the assistance of counsel.

At the outset, it appears that petitioner is laboring under a misconception with regard to the right to the assistance of counsel secured by the Sixth Amendment. Although this right has been held applicable to state criminal proceedings [20] as well as to direct appeals therefrom,[21] it has not, as yet, been extended to collateral proceedings of either an original or appellate nature in either federal or state courts.[22] These collateral proceedings, even though arising from underlying criminal convictions, are considered civil in character, and therefore beyond the pale of the Sixth Amendment.[23] Accordingly, petitioner's first claim does not present a constitutional question.

■ However, assuming *arguendo* the contrary, the court finds that petitioner has not met the extremely heavy burden [24] which falls upon one seeking to prove inadequate assistance of counsel in violation of the Sixth Amendment. The standard imposed is a stringent one, and, by analogy to trial situations, petitioner must show that the representation by counsel rendered his appeal a farce, a mockery of justice or something equivalent thereto.[25] Placing to one side for the moment the two-year delay contention, it is clear that the "witness-claim" has no merit. First, petitioner has not attempted in any way to disclose either the identity or materiality of the wit-

still available to him. And, see cases cited in note 15, *supra*.

19. *See* Bell v. Alabama, 367 F.2d 243, 249–250 (5th Cir. 1966); cert. denied 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788 (1967). It is especially noteworthy that the Attorney General has not discussed the exhaustion question and, apparently, is persuaded, too, that the circumstances support the court's finding.

20. Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

21. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

22. *Douglas* itself is so limited. Id. at 356, 83 S.Ct. 814.

23. The underlying policy considerations need not detain us here. *But see, generally*, United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 715–716 (2d Cir. 1960); *cf.*, also United States ex rel. Marshall v. Wilkins, 338 F.2d 404, 406 (2d Cir. 1964); Rodriguez v. Nelson, 286 F.Supp. 321, 323 (C.D.Cal.1968).

24. United States ex rel. Colon v. McMann, 270 F.Supp. 77, 79 (E.D.N.Y.1967).

25. *Cf.* United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950); *Cf. also* United States v. Garguilo, 324 F.2d 795, 796 (2d Cir. 1963); United States ex rel. Bristol v. McKendrick, 293 F.Supp. 414, 417 (S.D.N.Y.1968).

nesses he claims were not contacted. Consequently, his contention at the very most amounts to nothing more than a complaint that counsel erred in choosing not to contact certain unnamed persons. The contention fails not only because of its wholly conclusory nature, but also because implicit in it is the request that this court, assuming sufficient information to do so, apply hindsight to determine counsel to have committed an error of strategy. Relief cannot be predicated on either ground.[26]

■ Petitioner's complaint concerning the content of his *coram nobis* appeal brief is specious. The court has carefully reviewed the arguments raised on appeal, and it is perfectly clear that counsel made a diligent, good faith, competent and adequate effort to argue for a reversal of the County Court's denial of the *coram nobis* application. Counsel is not required to brief every conceivable argument,[27] and the decisions as to which to advance and the content thereof are manifestly strategic and tactical determinations which this court cannot second-guess. Not a scintilla of fact has been brought to this court's attention which would indicate in any way whatsoever that counsel provided less than competent assistance.[28]

■ And, finally, while it is clear from the two year lapse and from the letters submitted by petitioner [29] as exhibits to his present application that assigned counsel did not provide undivided and continuous attention to petitioner's appeal, the court does not find that counsel's service was rendered sufficiently inadequate thereby as to violate the Sixth Amendment. For that matter, petitioner himself nowhere indicates how such delay resulted in any prejudice to himself insofar as the decision of the Appellate Division is concerned.[30] The first claim is, accordingly, dismissed.

## Coercion of Petitioner's Counsel at his Second Trial (Altered Testimony at Petitioner's Third Trial)

■ Petitioner's second claim is that retained counsel in his second trial was threatened with disbarment if he continued with the trial. The facts which give rise to this claim, although sketchy at best,[31] are of no concern here, for petitioner is confined pursuant to the conviction in his *third*, not second trial. As noted earlier, the conviction in the sec-

26. United States v. Garguilo, *supra*, 324 F. 2d at 797.

27. *Cf.* Cardarella v. United States, 375 F. 2d 222, 230 (8th Cir. 1967); cert. denied 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176 (1967).

28. *Compare* Anders v. California, 386 U. S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

29. The letters, dated May 29, 1968, and July 1, 1968, are from assigned counsel, Oscar Bloom, Esq. to petitioner. They are very similar, and each describes counsel's continuing efforts to learn of the decision of the Court of Appeals in petitioner's direct appeal. Each requests petitioner to notify counsel when and if petioner learns of the decision. The decision in question had been handed down April 10, 1968.

30. *Cf.* United States ex rel. Hardy v. McMann, 292 F.Supp. 191, 194 (S.D.N.Y. 1968).

31. The facts are more fully set forth in the original *coram nobis* application and *coram nobis* appeal. In substance, petitioner there states that: counsel in petitioner's first trial, Bernard Kass, Esq., called eight to ten witnesses including counsel himself; that in petitioner's second trial, counsel, the same Mr. Kass, rested upon the close of the prosecution's case without calling a single witness; that such a course of conduct was caused by counsel's being threatened by an intermediary of the District Attorney with disbarment if he continued petitioner's case; that in the third trial, Kass, no longer petitioner's attorney, was called as a witness but only upon a court order, and thereupon "changed his testimony;" that the petitioner learned, subsequent to his third trial, that Kass had been under indictment and investigation prior to the second trial, and that, petitioner contends, this state of affairs had led Kass to "change his testimony."

ond trial was reversed and a new trial ordered by the Appellate Division.[32] Consequently, the proceedings in the second trial are not grounds upon which relief can here be predicated.

■ Even assuming that petitioner intends to claim that the testimony given by Kass at the third trial was changed from that given by Kass at the first trial, dismissal is still warranted for failure to set forth factual allegations necessary to support a claim of constitutional infirmity.[33] Those facts which are presented both here and in the state proceedings relate almost exclusively to the alleged threats made to Bernard Kass, Esq., in the second trial. But petitioner does not provide any facts in support of his charge—reiterated in his present reply—of changed testimony in the third trial. Nor, for that matter, does petitioner indicate either what testimony was changed or in what sense it was material to his third trial. This court, nevertheless, has carefully examined the transcripts of the first and third trials to ascertain whether any change(s) in testimony did occur. As might be expected, this review revealed a few minor changes of an inconsequential nature, undoubtedly attributable, in part, to the lapse of time between the first and third trials, and, possibly, to the change in the method of presenting Kass' testimony.[34] In sum, petitioner's second claim does not present any issues requiring an evidentiary hearing, and is, accordingly, dismissed.

*Improper Grand Jury Proceedings*

■ Petitioner's challenge on this point appears to be directed not against the jurisdiction of the state court either to hear or to impose sentence for the offense charged in the indictment, but rather against the process by which the evidence was presented to the Grand Jury. Thus, at the outset, it appears that the third claim is of a non-jurisdictional nature, which cannot serve as the basis for relief on this application.[35]

■ In addition, under New York law, a person seeking to challenge an indictment must do so prior to judgment unless he can demonstrate good cause for his untimeliness.[36] Petitioner's wholly unexplained [37] delay in bringing this claim to the attention of the state court would appear to constitute a waiver of this claim under New York law, and would operate as a further bar to its being reviewed here.[38]

■ And, finally, the third claim is fatally deficient of factual support. Petitioner's arguments that his indigency and limited investigative capacity preclude him from providing those facts which a hearing will develop is frivolous. If petitioner does not know what the facts are, then his request is wholly conjectural. On the other hand, if he knows but will reveal them only at the hearing, then he is abusing not only the habeas corpus process, but the hearing process he so desperately seeks as well.

32. 24 A.D.2d 885, 264 N.Y.S.2d 642 (November 1965).

33. United States ex rel. Homchak v. New York, 323 F.2d 449, 450 (2d Cir. 1963).

34. At the first trial, Kass asked and answered his own questions; at the third, petitioner's counsel asked Kass questions. The relevant portions of the trial transcripts are found on pp. 707–773 (Trial 1) and pp. 974–1006 (Trial 3).

35. *See, generally,* Knewel v. Egan, 268 U.S. 442, 445, 45 S.Ct. 522, 69 L.Ed. 1036 (1925); *cf.,* Shepherd v. Hunter, 163 F.2d 872, 873–874 (10th Cir. 1947) where neither the use of perjured testimony nor the suppression of evidence in

the Grand Jury's deliberative process raised a jurisdictional question and, hence, were not proper subjects of a habeas corpus application.

36. New York Code Crim.Proc. §§ 313(2), 314 and 315. *And see* People ex rel. Wysokowski v. Conboy, 19 A.D.2d 663; 241 N.Y.S.2d 245 (1963).

37. Petitioner states only that "[S]ubsequent to the third trial, petitioner became aware of Points II and III in this application."

38. *Cf.* United States ex rel. Realmuto v. Fay, 230 F.Supp. 158 (S.D.N.Y.1964); Schlette v. People of California, 284 F.2d 827, 834 (9th Cir. 1960).

*Conclusion*

Based upon a careful scrutiny of the papers, the court is of the opinion that petitioner's application for a writ of habeas corpus, although framed for the limited purpose of obtaining a hearing rather than release from custody, should be denied.

So ordered.