UNITED STATES of America, Appellee,

v.

William J. JOYCE et al.,
Defendants-Appellants.

Nos. 124–128, Dockets 76–1182, 76–1185, 76–1186, 76–1187 and 76–1192.

United States Court of Appeals,
Second Circuit.

Argued Sept. 3, 1976.

Decided Sept. 20, 1976.

---

John C. Corbett, Brooklyn, N. Y., filed a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), for defendant-appellant Walsh.

Steven Kimelman, Asst. U. S. Atty., Brooklyn, N.Y. (David G. Trager, U. S. Atty., Eastern District of New York, Bernard J. Fried, Asst. U. S. Atty., Brooklyn, N. Y., Alvin A. Schall, Asst. U. S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before KAUFMAN, Chief Judge, and FEINBERG and VAN GRAAFEILAND, Circuit Judges.

PER CURIAM:

The appellants were convicted of possessing goods stolen from a foreign shipment, 18 U.S.C. §§ 659 and 2, and conspiracy to commit that offense, 18 U.S.C. § 371.[1] Each appellant contends that certain rulings of Judge Platt in the jury trial below constituted prejudicial error. We disagree and, accordingly, affirm all of the convictions.[2]

On the morning of March 17, 1975, 42,000 Timex watches, part of a shipment in transit from Taiwan to Queens and worth over $700,000, together with a Ryder Rental truck, were stolen from the Flying Tiger Airline terminal at John F. Kennedy International Airport. Two hours after the theft appellant William Joyce, a cargo handler for the airline, told Robert Schoenly, the bartender at a nearby tavern, that he had "made a hit at the airport" and the stolen goods were in a truck. Schoenly relayed this information to Joyce's cousin, Donald Walsh, who told Schoenly the merchandise could be secreted at the house of Walsh's girlfriend, appellant Janet Terri. That evening Walsh, assisted by Peter Areiter, Thomas Burns and appellant Louis Bovell, all friends of Joyce and Walsh, transferred the stolen watches, in 117 car-

Daniel J. Sullivan, New York City, for defendant-appellant Joyce.

William G. Mulligan, New York City, for defendant-appellant Terri.

William Sperling, Kew Gardens, N. Y., for defendant-appellant Bovell.

Thomas J. O'Brien, New York City, filed a brief for defendant-appellant Grimsley.

---

1. Appellant James Grimsley was convicted of the substantive offense only.

2. The attorney for appellant Walsh filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The Government's motion to dismiss the appeal as frivolous was granted in open court.

tons labelled "Flying Tiger Lines," to Ms. Terri's basement playroom.[3]

The intensifying interest in the theft by the press and law enforcement agencies caused increasing concern to the defendants. Accordingly, on March 21 Walsh and Terri, uneasy about the current repository of the stolen goods, handed Schoenly cash to hire a van, which Terri had reserved earlier. Schoenly, Walsh, Bovell and John Freudiger then transported the cartons to Island Park, New York, where they left the rented truck locked and parked at a curbside. Three days later Joyce and Burns again moved the boxes to a garage that Leonard Nitti agreed to make available for $1000.[4]

During this same period, appellant Joyce was desperately seeking an outlet for the watches. To this end, he communicated with Edward Boyle, who agreed to "fence" the merchandise.[5] On March 27 Joyce, Burns, Boyle and appellant James Grimsley delivered the stolen watches to a Brooklyn auto body shop for sale to Joseph Giordano. Giordano, however, was an undercover detective who promptly put the appellants under arrest.

■ Only two of appellants' arguments merit comment. Terri contends her assigned lawyer, Marshall Kaplan, did not have sufficient time to prepare for trial, allegedly depriving Terri of effective assistance of counsel. Kaplan was appointed to represent Terri three days before this multi-defendant trial was scheduled to commence, replacing Terri's original attorney,

Joseph Lumbardo, who was engaged in a state murder trial. It is undisputed, however, that Kaplan conferred with John Corbett, codefendant Walsh's counsel, "quite a bit" prior to trial. And, when Kaplan requested permission to be excused from the courtroom briefly on the third day of trial to attend a real estate closing, Terri agreed to have codefendant Grimsley's counsel handle her defense during Kaplan's absence. She explicitly consented to this arrangement, remarking that the attorneys "apparently know what they are doing."[6]

■■ Terri's claim must fail, moreover, because we cannot perceive any prejudice resulting from Kaplan's representation of her. For over a quarter of a century this court has adhered to stringent requirements to establish a claim of ineffective assistance of counsel, *United States v. Wight,* 176 F.2d 376 (2d Cir. 1949), *cert. denied,* 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950); *Lunz v. Henderson,* 533 F.2d 1322 (2d Cir. 1976). Although we are aware that other circuits have relaxed the standards for concluding that ineffective assistance was rendered by counsel,[7] even on less rigid standards we would conclude that Kaplan's representation was not ineffective. "A convicted defendant is a dissatisfied client, and the very fact of his conviction will seem to him proof positive of his counsel's incompetence."[8] Terri is no exception, but she does not cite to us any errors or inadequacies that would warrant reversal. Her disagreement with counsel seems to rest in the main on trial strategy.[9] A close examination of the

**3.** Schoenly, Areiter and Burns, named with appellants in the original indictment, testified for the Government at the trial below, having pleaded guilty to the conspiracy count.

**4.** Nitti, who was also named with appellants in the original indictment, pleaded guilty to conspiracy and testified for the Government at trial.

**5.** Boyle pleaded guilty to possession of stolen goods and testified against the appellants at trial.

**6.** During Kaplan's absence no direct testimony was introduced against Terri, and there is no persuasive evidence of prejudice from counsel's unavailability during this short interval.

**7.** *See, e. g., Garland v. Cox,* 472 F.2d 875 (4th Cir.), *cert. denied,* 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973).

**8.** *United States v. Garguilo,* 324 F.2d 795, 797 (2d Cir. 1963).

**9.** Appellant, more specifically, complains of Kaplan's decision not to present testimony, but simply to join in a stipulation that Terri was present in Massachusetts (not New York) on March 17 and 18 and that her parents (and not she) owned the house where the stolen watches were first hidden. Kaplan, however, stressed these exculpatory facts in both his opening and closing statements, insuring their impact would not escape the sensibilities of the jury. *See*

record demonstrates that Terri was ably and vigorously defended.[10]

 Bovell and Grimsley complain Judge Platt erred in instructing the jury that it could convict if it found the defendants had consciously closed their eyes to the fact they were dealing with stolen goods.[11] This court has consistently upheld use of the "conscious avoidance" charge where defendants have denied wrongful knowledge in circumstances that should have apprised them of the unlawful nature of their conduct. *United States v. Jacobs*, 475 F.2d 270 (2d Cir.), *cert. denied sub nom. Lavelle v. United States*, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973); *United States v. Brawer*, 482 F.2d 117 (2d Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974). Such indicia of criminality clearly were present here. Bovell, on the evening of March 17, transferred 117 cartons labelled "Flying Tiger Lines" from one rental truck to another and transported this obviously commercial quantity to the basement of a private home. Four nights later he again moved the boxes. Grimsley transported the boxes on March 24 after Boyle offered him $250 to move what Boyle told him were stolen goods.

Indeed, a "conscious avoidance" charge does not lessen the quantum of knowledge a jury must find. The very notion that one is straining to remain ignorant of obvious facts implies the imminence of actual knowledge. Since proof of scienter frequently depends on circumstantial evidence, a defendant's studied effort to avoid drawing conclusions from surrounding facts is probative of guilt.

We have considered the other arguments raised by the appellants and find them to be without merit.

Affirmed.

---

*United States v. Calabro*, 467 F.2d 973, 985–86 (2d Cir. 1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587, *rehearing denied*, 411 U.S. 941, 93 S.Ct. 1891, 36 L.Ed.2d 404 (1973).

10. We need not linger over Terri's claim that there was insufficient independent, non-hearsay evidence to connect her to the conspiracy, *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969), *cert. denied sub nom. Lynch v. United States*, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970). On March 21 Walsh instructed Schoenly, in Terri's presence, to hire a truck to move the stolen goods. Terri reserved the truck, furnished part of the funds necessary to rent the vehicle, and tended bar in Schoenly's place while he performed his mission. The cartons of stolen watches were hidden in Terri's basement from March 17–21, and she was present in New York during the final three days of that period. These non-verbal acts, *see Lutwack v. United States*, 344 U.S. 604, 617–19, 73 S.Ct. 481, 97 L.Ed. 593, *rehearing denied*, 345 U.S. 919, 73 S.Ct. 726, 97 L.Ed. 1352 (1953) and circumstantial evidence, were sufficient to permit the jury to draw the reasonable inference that Terri "knew about the enterprise and intended to participate in it or make it succeed," *United States v. Cirillo*, 499 F.2d 872, 883 (2d Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974).

11. The relevant portion of the charge as to the necessary element of guilty knowledge in the possession count follows:

Two of the defendants have flatly testified that they had no such knowledge. Now, in this connection bear in mind that one may not willfully and intentionally remain ignorant of a fact, important and material to his conduct, in order to escape the consequences of the criminal law.

If you find from all the evidence beyond a reasonable doubt that any defendant believed he or she received and was then in possession of stolen watches and deliberately and consciously tried to avoid learning that the watches in question were stolen in order to be able to say, should he or she be apprehended, that he or she did not know, you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge.

In other words, you may find that any defendant acted knowingly if you find that either he or she actually knew that he or she had received stolen watches or that he or she deliberately closed his or her eyes to what he or she had every reason to believe was the fact.

I should like to emphasize, ladies and gentlemen, that the requisite knowledge cannot be established by demonstrating merely negligence or even foolishness on the part of a defendant.