UNITED STATES of America, Appellee,

v.

Charles DANIELS, Appellant.

No. 1256, Docket 77–1071.

United States Court of Appeals, Second Circuit.

Argued May 31, 1977.

Decided June 30, 1977.

David Gould, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Traeger, U. S. Atty., E. D. N. Y., and Bernard J. Fried, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Barry Bassis, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for appellant.

Before LUMBARD, ANDERSON and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Charles Daniels appeals from a judgment of conviction entered in the Eastern District on January 28, 1977, after a three day jury trial before Judge Pratt. Daniels was found guilty on two counts: stealing goods with a value of over $100 which were moving in interstate commerce and receiving and possessing those goods, in violation of 18 U.S.C. § 659. Daniels was sentenced by Judge Pratt to concurrent terms of eight years on each count, to be served consecutively to a state sentence for which Daniels is presently incarcerated. Daniels raises two claims: (1) that he was denied the effective assistance of counsel at trial and at sentencing; and, (2) that at sentencing he was prevented from presenting information in mitigation of punishment. We find that Daniels was adequately represented at trial but not at sentencing; accordingly, we affirm Daniels' conviction but vacate his sentence and remand for resentencing.

The evidence at trial showed that on the morning of April 13, 1972 Daniels and Dan Galvin hijacked a Nelson Distributors truck, which was loaded with men's and women's clothing, from an area outside the loading ramp of a Gertz Department Store in Jamaica, Queens. The principal witnesses at

trial were Galvin, Chester Crawford (a fence who aided in disposing of the stolen goods), and Thomas Ingram (the driver of the hijacked truck), all of whom made in-court identifications of appellant. In addition, Ingram testified that prior to trial he had picked out Daniels' photograph from a photographic array, and the government introduced the array into evidence. Daniels did not take the stand and presented no evidence in his defense.

Ingram testified that while he was waiting to unload his truck on the morning of the 13th, an armed black male (whom he later identified as Daniels) jumped in the truck's cab and told him to move over. Galvin entered the truck shortly thereafter and Daniels ordered Ingram to put on a pair of glasses covered with black tape. Prior to putting on these glasses Ingram had an opportunity to observe Daniels for three-to-five minutes; he stated that he "looked right at him."

Galvin testified that, after obtaining control of the truck, he drove while Daniels directed him to Crawford's house. Crawford was not at home and Daniels and Galvin unloaded about two-thirds of the merchandise into Crawford's garage (apparently, the garage would not hold the full load), while Ingram waited. Daniels then drove Ingram in the truck to a location in Queens, where he left Ingram with the truck. Galvin had followed behind in Crawford's car and picked up Daniels.

Daniels and Galvin later returned to Crawford's house, by which time Crawford had arrived. Crawford testified that he had fenced goods for Daniels in the past but grew angry with Daniels for bringing the driver and the truck directly to his house. Crawford refused to handle the goods for Daniels and told him to remove the merchandise; he then lent Daniels a truck to accomplish this.

Daniels and Galvin succeeded in finding another outlet for the goods through Arnie Sherman, a fence known to Galvin. They delivered the merchandise to a store in Camden, New Jersey on the morning of April 14. They then returned to New York where Sherman paid them $5,000.

On November 25, 1975 a two count indictment was filed against Daniels. Prior to jury selection on October 28, 1976, Daniels made a *pro se* motion which alleged numerous grounds for dismissal of the indictment, most of which the court summarily dismissed as without merit. These claims have not been raised on appeal. One of the claims raised by appellant was that there had been a three and one-half year delay between the alleged commission of the crime and the indictment. The government explained that the indictment had not been brought earlier because Daniels' participation in the hijacking had not been discovered until 1975 and that this claim was borne out by the 3500 materials, which the defense had received. The court indicated that given the government's explanation, there was probably no basis upon which to dismiss the indictment; however, the court suggested that it would hold a hearing on the government's good faith if the defense decided this would be productive. The court then called a recess so that Daniels could confer with counsel on this issue and discuss Daniels' proposal that there were "some things" he wanted to say before trial began. After the recess defense counsel asked to be relieved on the grounds that he did not feel he had Daniels' "full confidence." Daniels indicated that there were "certain issues" he wanted to raise that counsel apparently felt should not be raised and stated that he was not "familiar with whether a lawyer is competent or not"; further, Daniels complained that counsel had not shown him the 3500 materials until two days earlier and that he had not had sufficient time to review them. It appears that counsel showed the 3500 materials to Daniels shortly after he received them. The court refused to relieve counsel on these grounds, stating that he was a "highly experienced lawyer," who had a "proven track record" in defending appellant.[1]

1. The court was referring to the fact that counsel had previously represented Daniels in a prior trial on similar charges. That trial resulted in a hung jury and the indictment was sub-

After the luncheon recess that same day the court acknowledged the receipt of a note from Daniels which apparently alleged in substance that defense counsel and the prosecutor had engaged in a conspiracy against him. As a "P.S." the note added that counsel had failed to make suppression motions and had denied him the effective assistance of counsel. After a colloquy with counsel, the court stated that it was confident that counsel could effectively represent appellant and that appellant's requests were merely attempts to delay the trial. On appeal appellant has not claimed that the court erred in failing to appoint new counsel at trial and on this record there could be no basis for such a claim. See, e. g., *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973).

At Daniels' sentencing on January 28, 1977, he moved, *inter alia*, to set aside the conviction on the grounds of ineffective assistance of counsel and requested that the court adjourn sentencing and appoint new counsel. Trial counsel informed the court that Daniels had advised him that he no longer desired his representation.

Daniels' confirmed the fact that he desired new counsel and stated that he did not wish to proceed *pro se*. The court rejected Daniels' motion. Based on his observations at trial and during the pre-trial proceedings, Judge Pratt said that Daniels did "not make it particularly easy" for counsel to represent him and found that counsel "did an effective job, both in the analysis of the case [and] in the cross-examination of witnesses, making objections when they were called for, he performed effectively as an officer of the Court in not making frivolous motions."

The court decided to proceed with sentencing, despite what it termed "the theoretical absence of counsel." Apparently, this decision was based on the court's conclusion that Daniels' application for an adjournment and appointment of new counsel had come too late[2] and that Daniels would not be prejudiced by the "technical" absence of counsel; thus, the court stated that "there really is not too much that can be said in connection with mitigation of penalty."

After the court had pronounced sentence, Daniels brought to the court's attention letters from the warden to Daniels, thanking him for rendering life-saving assistance to a fellow inmate and from two correctional officers at the Metropolitan Correctional Center, which spoke favorably of him. These letters had been submitted to the probation authorities but had not been included in Daniels' pre-sentence report.[3] After examining the letters Judge Pratt indicated that he had not seen them *before* but that their "tone" was referred to in the MCC institutional report. The court then suggested that appellant submit a motion for reduction of sentence with the letters attached.

Daniels claims that counsel's ineffective assistance essentially manifested itself in

---

sequently dismissed for violation of the Interstate Agreement on Detainers. The record indicates that counsel was appointed by the court and we note that counsel's name appears on the Criminal Justice Act roster of counsel for the Eastern District, established pursuant to 18 U.S.C. § 3006A(a). Section 3006A(b) provides, *inter alia*, that, "Counsel furnishing representation under the plan shall be selected from a panel of attorneys designated or approved by the court, or from a bar association, legal aid agency, or defender organization furnishing representation pursuant to the plan."

**2.** The Court noted that it had not received prior notice that Daniels would not be represented by trial counsel at sentencing. The record also indicates that the court had granted a previous request by Daniels to adjourn sentencing.

**3.** Appellant contends that these letters were *removed from his file without his knowledge.* The record is unclear as to whether appellant saw his pre-sentence report, although it appears that trial counsel must have seen the report since he stated that he agreed with the probation *report's assessment of appellant.* The government explains that the letters from the two correctional officers were not included in the report because the officers had not been authorized to forward the letters by the warden; *no explanation is given for the failure to* include the warden's letter.

five instances: (1) his failure to request a pre-trial *Wade* hearing; (2) his failure to pursue the issue of pre-indictment delay; (3) his failure to request charges on accomplice and immunized witness testimony; (4) his failure to object to an allegedly improper remark made by the prosecutor in summation; and, (5) his failure to provide proper representation at sentencing. We find it unnecessary to reconsider the standard for inadequacy of counsel enunciated in *United States v. Wight*, 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). We conclude that under either the traditional standard or any of the more "liberal" standards suggested, Daniels was adequately represented at trial. See, *United States v. Medico*, 557 F.2d 309, 318, and n.15 (2d Cir. 1977); *United States v. Taylor*, 562 F.2d 1345, 1360 (2d Cir. 1977); *Rickenbacker v. Warden, Auburn Correct. Facility*, 550 F.2d 62, 66 (2d Cir. 1976).

■ Appellant insists that counsel erred in waiting until trial to challenge Ingram's out-of-court identification and should have sought a pre-trial *Wade* hearing. In *Saltys v. Adams*, 465 F.2d 1023 (2d Cir. 1972), we held that "where not just the key but the only evidence against the defendant connecting him with the crime was identification testimony," id. at 1028, counsel's failure to seek a suppression hearing in the absence of the jury to explore the evidence underlying a proposed in-court identification violated the defendant's right to counsel. However, unlike *Saltys,* there was never really any question in this case regarding the defendant's identity; indeed, there were three eye-witnesses to Daniels' participation in the crime. Further, unlike *Saltys*, appellant has not suggested and we do not find any basis for questioning the propriety of the out-of-court identification procedure. After the government sought to introduce the photographic array from which Ingram selected appellant's photograph, counsel conducted a voir dire in which he attempted to bring out, before the jury, the fact that Ingram had only a short time in which to view Daniels and that this was not an adequate opportunity to observe him. Under the circumstances, we do not think that Daniels was prejudiced by counsel's failure to request a pre-trial suppression hearing on the circumstances underlying the out-of-court identification. The voir dire conducted by counsel was primarily an attempt to impeach Ingram's credibility; as such, we think it was a matter of trial strategy best left to the discretion of trial counsel and the assessment of the trial judge. See, e. g., *United States v. Joyce*, 542 F.2d 158, 160 (2d Cir. 1976); *United States v. Calabro, supra*, 467 F.2d at 985–86; *United States v. Garguilo*, 324 F.2d 795, 797 (2d Cir. 1963); *United States v. Duhart*, 269 F.2d 113, 115 (2d Cir. 1959).

■ Similarly, although appellant does not raise the preindictment delay issue itself on appeal, he claims that trial counsel was remiss in failing to pursue this issue further before the trial court. Of course, defense counsel is not required to brief and argue every conceivable argument. The decisions as to which claims to advance are largely matters of tactics which an appellate court should not attempt to second-guess. See *United States ex rel. Sabella v. Follette*, 316 F.Supp. 452, 457 (S.D.N.Y. 1970). We note Judge Pratt's specific finding that counsel acted properly in not raising frivolous motions. Further, appellant has failed even to suggest what, if any, prejudice he suffered due to the pre-indictment delay. Given the government's specific representation to the court that the indictment was brought in 1975 because it was not until then that Daniels' participation in the hijacking was discovered, and that this representation was corroborated by 3500 material furnished to the defense, we do not think counsel was remiss in failing to press the issue of pre-indictment delay. Cf. *United States v. Lovasco, —— U.S. ——*, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Vispi*, 545 F.2d 328, 332 n.4 (2d Cir. 1976); *United States v. Finkelstein*, 526 F.2d 517, 525–26 (2d Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976).

■ Appellant also contends that counsel erroneously failed to request a charge on accomplice or immunized witness testimony. Defense counsel cross-examined Galvin and Crawford on their criminal histories, their relation to the crime, and the circumstances under which they testified; these factors were again brought out during the defense summation. The jury was instructed that in determining the credibility of a witness they should consider, "Whether he has a motive to testify falsely. Whether there is any reason he might color his testimony . . . Scrutinize the testimony given and the circumstances under which each witness testified . . . The relationship each witness might bear to either side of the case, the manner in which each witness might be affected by the verdict." Although we have indicated that it is preferable that trial judges charge the jury that accomplice testimony "should be scrutinized with special care and caution," *United States v. Abrams*, 427 F.2d 86, 90 (2d Cir.), *cert. denied*, 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970); see *United States v. Swiderski*, 539 F.2d 854, 859–60 (2d Cir. 1976); see also *United States v. Leonard*, 161 U.S.App.D.C. 36, 494 F.2d 955, 961 (1974) (reversible error to deny instruction on immunized witness testimony), on this record we do not think appellant was denied the effective assistance of counsel because of the failure specifically to request charges on accomplice and immunized witness testimony.

■ Further, there is no merit to Daniels' claim that counsel should have objected to an allegedly improper remark made by the prosecutor during the summation to the effect that Galvin and Crawford had no motive to testify falsely. Defense counsel specifically responded to this remark in his own summation and the decision whether to object to an arguably improper remark or to wait and attack it in the defense summation was strictly a matter of tactics. Cf. *Rickenbacker v. Warden, Auburn Correct. Facility, supra*, 550 F.2d at 66. In sum, we conclude, as did the district court that defense counsel's trial performance did not deprive appellant of the effective assistance of counsel.

■ We must still consider Daniels' claim that he did not have effective counsel at sentencing. The record indicates that by the time of sentencing, a rift had developed between defense counsel and appellant. Daniels not only had informed his counsel that he no longer desired his services, but counsel was in the awkward position of attempting to represent a client who charged that he had rendered ineffective assistance at trial. At the outset of sentencing counsel informed the court that Daniels had told him that he did not wish to be represented by counsel at sentencing. Daniels confirmed this, asked the court to appoint new counsel for sentencing, and argued that he had been deprived of the effective assistance of counsel at trial. Although the court did not specifically relieve counsel, the minutes reveal that the parties and the court acted on the assumption that counsel was no longer representing Daniels.

We find that the absence of counsel at sentencing was more than "theoretical" and that for all practical purposes, Daniels was acting without counsel at sentencing. Although Judge Pratt was of the opinion that "there really is not too much that can be said in connection with mitigation of penalty," and had the warden's institutional report which mentioned that official's letter of appreciation for saving a fellow inmate's life, at the time he imposed sentence the judge was unaware of two recent evaluations (dated June 3 and 4, 1976) of Daniels by senior correction officers at the MCC. One letter recounted the details of the incident at the MCC in which Daniels had placed his own life in jeopardy in order to save the life of another inmate, stated that Daniels had helped many inmates "to help themselves and each other toward the goals of becoming productive and useful residents of this institution," and concluded by stating, "I very strongly believe Daniels has good potential of becoming a real asset to society and his family upon release." The other letter was similar in tone and concluded that "Daniels will live up to the normal

expectations of society once he is returned to the community, which should be at the most expeditious opportunity." These evaluations were far more helpful to Daniels than the rather neutral warden's institutional report. Although counsel appears to have seen the presentence report prior to sentencing, see note 3, supra, he apparently was unaware that these letters had not been included. In any event, no attempt was made to bring them to the court's attention, until, after sentence had been pronounced, Daniels asked the court if it had reviewed the correction officers' letters.

In sum, we conclude that for all practical purposes Daniels had no counsel at sentencing and that he was prejudiced by the lack of an advocate who could have marshalled the available commendations to which we have referred and have made argument in mitigation of any judgment to be imposed. It follows that the sentence should be vacated and the case remanded for resentencing, at which time appellant will have an opportunity to be represented by counsel. See *Davis v. Estelle*, 529 F.2d 437, 439–40 (5th Cir. 1976); *United States v. Carroll*, 510 F.2d 507, 511–12 (2d Cir. 1975), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2633, 49 L.Ed.2d 378 (1976).

Conviction affirmed; remanded for resentencing.