461 F.2d 956
 UNITED STATES of America ex rel. Frederick JOHNSON,
Petitioner-Appellant,
v.
DEPARTMENT OF CORRECTIONAL SERVICES OF the STATE of NEW
YORK, Russell G. Oswald, Commissioner, and New
York State Board of Parole, Paul F.
Regan, Chairman, Respondents-Appellees.
 No. 571, Docket 71-2086.
 United States Court of Appeals,
Second Circuit.
 Argued March 7, 1972.
Decided May 1, 1972.
 
 Jerome G. Shapiro, New York City (Bancroft Littlefield, Jr., New York City, on the brief), for petitioner-appellant.
 Hillel Hoffman, Asst. Atty. Gen. of the State of New York, New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondents-appellees.
 Before FRIENDLY, Chief Judge, TIMBERS, Circuit Judge, and JAMESON, District Judge.*
 TIMBERS, Circuit Judge:
 
 
 1
 The only issues raised on this appeal from the denial of a state prisoner's petition for a writ of habeas corpus are whether the accused had a constitutional right to counsel at a post-indictment, pre-trial photographic identification session in the prosecutor's office in the absence of the accused, and whether the photographic identification procedure at that session was impermissibly suggestive.
 
 
 2
 Frederick Johnson was convicted on March 3, 1969 in the New York Supreme Court, Bronx County, after a jury trial before Justice Murtagh of assault in the first degree and possession of a weapon as a felony in connection with the February 11, 1968 shooting of Ernest Holloway.[1] The Appellate Division on May 26, 1970 affirmed without opinion, 34 App.Div.2d 893, 311 N.Y.S.2d 814 (1st Dept. 1970), and the New York Court of Appeals denied leave to appeal. Having thus exhausted his state remedies, Johnson filed a petition for a writ of habeas corpus on November 10, 1970 in the District Court for the Southern District of New York. Among his numerous claims,[2] Johnson alleged that an in-court identification of him by the victim's wife violated his rights under the Sixth and Fourteenth Amendments, because Johnson had not been represented by counsel at the post-indictment photographic identification session where the witness identified Johnson as the assailant from a photograph, and because the photographic identification procedure was impermissibly suggestive. Judge Tenney on September 24, 1971 denied the petition without a hearing.[3] For the reasons stated below, we affirm.
 
 I.
 
 3
 The evidence adduced at Johnson's state court trial established that, shortly before midnight on February 11, 1968, Mr. and Mrs. Holloway were watching television in their apartment when the doorbell rang. Arline Holloway went to the door, looked through the peephole long enough to realize that she did not know the person standing outside the foyer of their apartment and returned to the living room. The doorbell then rang again. This time both Ernest and Arline Holloway went to the door. As Ernest Holloway opened the door, a bullet fired by the person standing outside the foyer struck him in the neck. A second bullet missed Holloway and lodged in the door. The assailant then fled.
 
 
 4
 While Ernest and Arline Holloway were able to describe the assailant for the police, they both said that they had never seen the assailant prior to the assault. A little more than one month after the shooting, on March 16, 1968, however, Ernest Holloway stated for the first time that petitioner Frederick Johnson was the person who had shot him.[4] At the trial Holloway explained that the reason he did not identify Johnson as his assailant until a month after the shooting was that "I wanted to take the law in my hand and deal with him myself personally. . . . But then, a month later, then I revealed to Detective Marschat, because I spoke to a priest in the hospital and my family who persuaded me to tell the truth."
 
 
 5
 As a result of Holloway's statement, Johnson was indicted on May 2, 1968 for the shooting. On September 13, 1968, Johnson was arraigned and held in custody. Counsel was assigned to represent him on October 10.
 
 
 6
 It was after these events that the challenged photographic identification occurred. On January 16, 1969, Arline and Ernest Holloway came to the office of Harold Enten, the Assistant District Attorney assigned to prosecute the case against Johnson. At this time Arline Holloway knew that her husband had identified Johnson as the assailant. However, Arline Holloway had never met Johnson (except for her brief glimpse of him on the night of February 11, 1968) and had never seen a photograph of him. In the absence of Johnson's counsel, who had not been notified, Patrolman Marschat and Mr. Enten showed Arline Holloway five photographs, including a photograph of Johnson. She identified the photograph of Johnson as one of the persons whom she had seen through the peephole just before the shooting.
 
 
 7
 Prior to trial, defense counsel moved to suppress any in-court identification of Johnson by Arline Holloway. After conducting a pre-trial hearing on February 26, 1969, Justice Murtagh ruled that the five photographs used at the January 16, 1969 photographic identification could not be shown at trial and that Arline Holloway could not testify as to her prior identification of Johnson by means of photographs.[5] Justice Murtagh, however, denied Johnson's motion to suppress any in-court identification. He held that Johnson did not have a right to counsel at the photographic identification session; that the identification procedure in question was not impermissibly suggestive; and, in any event, that the in-court identification would be based exclusively on the original identification and would not be tainted by the photographic identification.
 
 
 8
 At trial Arline Holloway identified Johnson as the assailant and adhered to her identification despite some inconsistencies developed by defense counsel.[6]
 
 II.
 
 9
 Relying on United States v. Wade, 388 U.S. 218 (1967), Johnson contends that he had a right to have his counsel present at the post-indictment photographic identification session where Arline Holloway selected his photograph as one of the assailants. In United States v. Bennett, 409 F.2d 888, 898-900 (2 Cir. 1969), cert. denied sub nom. Haywood v. United States, 396 U.S. 852 (1970), a case involving a post-arrest, pre-indictment photographic identification, we rejected appellant's claim that he had a right to have his counsel present. We have consistently adhered to this position and have also followed it with respect to post-indictment photographic identifications such as in the present case. See, e. g., United States v. Fernandez, 456 F.2d 638, 641 n. 1 (2 Cir. 1972); United States v. Mojica, 442 F.2d 920, 921 (2 Cir. 1971); United States v. Fitzpatrick, 437 F.2d 19, 25-26 (2 Cir. 1970). The reasons for not extending Wade to post-arrest photographic identifications were cogently set forth by Chief Judge Friendly in United States v. Bennett, supra, 409 F.2d at 899-900, and apply equally to post-indictment identifications:
 
 
 10
 "[T]o require that defense counsel be allowed or appointed to attend out-of-court proceedings where the defendant himself is not present would press the Sixth Amendment beyond any previous boundary. None of the classical analyses of the assistance to be given by counsel . . . suggests that counsel must be present when the prosecution is interrogating witnesses in the defendant's absence even when, as here, the defendant is under arrest; counsel is rather to be provided to prevent the defendant himself from falling into traps devised by a lawyer on the other side and to see to it that all available defenses are proffered. Many other aspects of the prosecution's interviews with a victim or a witness to a crime afford just as much opportunity for undue suggestion as the display of photographs . . . ."
 
 
 11
 We are aware that the result reached in Bennett and in the cases that have followed has generated critical comment[7] and that one other circuit has decided otherwise.[8] Nevertheless, we continue to believe that Bennett was correctly decided and we adhere to that decision.
 
 
 12
 Johnson's attempt to distinguish Bennett and its progeny by arguing that the photographic identification here was more critical is unpersuasive. There is nothing in the rationale of Bennett and its successors to suggest that our holding that there is no constitutional right to counsel at photographic identifications turned on whether the subsequent in-court identification was critical to the prosecution's case. Moreover, when the Supreme Court has extended the right to counsel to various pre-trial confrontations between the accused and the state, that right has not been made contingent on a showing that evidence obtained in the absence of counsel added critical weight to the prosecution's case. Rather, the Court has held that when a particular type of confrontation can be deemed a critical stage in the prosecution because counsel's absence would derogate from an accused's right to a fair trial, the right to assistance of counsel has extended to all such confrontations, regardless of whether the confrontation was considered critical in a particular case. See United States v. Wade, supra, 388 U.S. at 228-239; Miranda v. Arizona, 384 U.S. 436, 445 (1966); Hamilton v. Alabama, 368 U.S. 52, 54-55 (1961). In a pre-trial proceeding, therefore, an accused either has a constitutional right to assistance of counsel or he does not. In the case of post-arrest photographic identifications, either before or after indictment, we have held, and we continue to hold, that such a right does not exist. That the in-court identification here may have added critical weight to the state's case has no bearing on our holding that Johnson did not have a constitutional right to assistance of counsel when the photographs were displayed to Arline Holloway.
 
 III.
 
 13
 We likewise find without merit Johnson's claim that the photographic identification procedure was impermissibly suggestive. Cf. Simmons v. United States, 390 U.S. 377, 384 (1968). The circumstances surrounding the displaying of the photographs to Arline Holloway were fully developed at the pre-trial suppression hearing. There was ample evidence to support Justice Murtagh's finding that the manner in which Patrolman Marschat and Assistant District Attorney Enten showed the photographs to Arline Holloway did not violate Johnson's right to due process of law. The witness, while seated alone at a table and without any assistance from Marschat or Enten, selected Johnson's photograph, which was in the middle of an array of five photographs. Moreover, while Johnson suggests on appeal that Ernest Holloway may have described Johnson's features or Johnson's photograph to Arline Holloway, defense counsel was unable at either the hearing or the trial to develop a shred of evidence to support this supposition. To the contrary, Arline Holloway was quite emphatic in denying that her husband had in any way influenced her identification of Johnson by photograph.
 
 
 14
 Johnson's chief objection to the photographic identification procedure is that his photograph was the only one in the array of five displayed to Arline Holloway showing a man wearing eyeglasses.[9] In view of all the circumstances surrounding this photographic identification, however, we do not believe that this difference between Johnson's photograph and the others suggested to the witness that Johnson was more likely to be the culprit. While Johnson's photograph did single out a distinguishing personal characteristic of him not possessed by the men in the other photographs, cf. United States v. Abbate, 451 F.2d 990, 992 (2 Cir. 1971), it is clear that Arline Holloway's selection of Johnson's photograph was not influenced by this distinction. Prior to the photographic identification session, Arline Holloway had never said that the man whom she had seen through the peephole on the night of the shooting had been wearing eyeglasses. Furthermore, while there were inconsistencies in her description of the assailant, she never wavered from her insistence that the assailant had not been wearing eyeglasses. Thus, Arline Holloway's description of the assailant indicates that her photographic identification of Johnson was based not on Johnson's wearing eyeglasses in the picture, but on Johnson's facial features which she remembered from her encounter with him on the night of the shooting. Cf. United States v. Fernandez, 456 F.2d 638, 642-643 (2 Cir. 1972).
 
 
 15
 Since the state trial court afforded Johnson a full and fair evidentiary hearing on his claims regarding the photographic identification, and since the findings of fact of the state trial judge were amply supported by the record, there was no need for the district court to conduct an evidentiary hearing. 28 U.S.C. Sec. 2254(d) (1970). See United States ex rel. Sabella v. Follette, 432 F.2d 572, 574-75 (2 Cir. 1970); United States ex rel. Fein v. Deegan, 410 F.2d 13, 17 (2 Cir.), cert. denied, 395 U.S. 935 (1969).
 
 
 16
 We express our appreciation to Jerome G. Shapiro, Esq., appellant's court appointed counsel in this Court, for his excellent brief and able oral argument.
 
 
 17
 Affirmed.
 
 
 
 *
 Senior District Judge of the District of Montana, sitting by designation
 
 
 [1]
 On May 9, 1969, Justice Murtagh sentenced Johnson to imprisonment for an indeterminate period of not more than ten years and not less than three years and four months on the assault charge, and for an indeterminate period of not more than seven years and not less than two years and four months on the weapon charge, the sentences to run concurrently
 On January 20, 1972, Johnson was released on parole from Green Haven Correctional Facility. He is now in the constructive custody of the New York State Board of Parole. As we said in United States ex rel. Sadness v. Wilkins, 312 F.2d 559, 560 (2 Cir. 1963), "[The Supreme Court's] opinion in Jones v. Cunningham, [371 U.S. 236] (1963), now makes clear that a prisoner who is released upon parole remains 'in custody' within the meaning of federal habeas corpus jurisdiction, 28 U.S.C. Sec. 2241, and that release upon parole does not render moot an appeal from a habeas corpus proceeding conducted prior to release."
 
 
 [2]
 In addition to his claims relating to the in-court identification, Johnson alleged four other claims in his petition. Judge Tenney dismissed three of these claims on the ground that they raised errors of state law which did not appear to have deprived Johnson of a fair trial. Judge Tenney also dismissed Johnson's other claim, that the trial judge did not give defense counsel adequate opportunity to prepare for trial, on the ground that it was not supported by the record. Johnson has not pursued these claims on appeal
 
 
 [3]
 On November 4. 1971, Judge Tenney granted Johnson a certificate of probable cause. On December 10, 1971, we granted Johnson's motion for assignment of counsel and leave to proceed in forma pauperis
 
 
 [4]
 Holloway testified at trial that he had known Johnson for several years, having met him through Johnson's wife, Gloria Meekin. Prior to Gloria Meekin's marriage to Johnson in 1967, she had lived with Holloway from 1957 until 1963, and she had had children by Holloway in 1961 and 1963
 
 
 [5]
 This ruling was required by People v. Cioffi, 1 N.Y.2d 70, 133 N.E.2d 703, 150 N.Y.S.2d 192 (1956). See also People v. Giamario, 20 App.Div.2d 815, 248 N.Y.S.2d 726 (2d Dept. 1964). Appellant argues that his counsel's absence at the photographic identification necessarily resulted in Justice Murtagh's ruling that it be kept from the jury. We do not read Cioffi, however, to mean that defense counsel is precluded from bringing up the photographic identification at trial if he wishes to do so. See notes to N.Y.Crim. Pro. Law Secs. 60.25 and 60.30 (McKinney 1971). While Justice Murtagh's ruling was broadly stated, it appeared to be addressed to the prosecution under the Cioffi rule. There is no reason to believe that he would have barred defense counsel from developing the photographic identification at trial if he had chosen to do so
 
 
 [6]
 Ernest Holloway also identified Johnson as the assailant. Johnson's defense consisted primarily of his wife's testimony that he was at home with her when the shooting occurred
 
 
 [7]
 Comment, 21 Syracuse L.Rev. 1235 (1970); Comment, 16 Vill.L.Rev. 741 (1971); Comment, 44 Temp.L.Q. 434 (1971)
 
 
 [8]
 United States v. Ash, 461 F.2d 92, 99, (D.C.Cir. 1972) (en banc), cert. granted, 407 U.S. 909 (1972)
 It is important to note that the en banc vote in United States v. Ash, supra, was five to four and that the majority of other circuits which have considered this issue agree with our decision in Bennett. See United States ex rel. Reed v. Anderson, 461 F.2d 739, 745 (3 Cir. 1972) (en banc), United States v. Serio, 440 F.2d 827, 829-30 (6 Cir.), cert. denied, 404 U.S. 838 (1971); United States v. Roustio, 435 F.2d 923, 924 (9 Cir. 1970); United States v. Ballard, 423 F.2d 127, 131 (5 Cir. 1970); United States v. Robinson, 406 F.2d 64, 67 (7 Cir.), cert. denied, 395 U.S. 926 (1969); McGee v. United States, 402 F.2d 434, 436 (10 Cir. 1968), cert. denied, 394 U.S. 908 (1969).
 
 
 [9]
 We assume for purposes of this appeal that of the five photographs displayed to Arline Holloway only Johnson's depicted a man wearing eyeglasses. We cannot be sure that this was so, because, while we have photographs of the five men involved in the identification, some of the photographs are not the ones shown to Arline Holloway
 Johnson does not contend-nor would the photograph support such a contention-that his photograph contained any distinguishing characteristics other than the eyeglasses which suggested to the witness that he was more likely to be the assailant.