George M. SALTYS, Petitioner-Appellant,

v.

Frederick E. ADAMS, Warden, Connecticut State Prison, Respondent-Appellee.

No. 679, Docket 71–1973.

United States Court of Appeals, Second Circuit.

Argued April 14, 1972.

Decided August 18, 1972.

---

Bonnie P. Winawer, New York City, for petitioner-appellant.

Richard F. Banbury, Asst. State's Atty., Hartford, Conn. (John D. LaBelle, State's Atty., Hartford, Conn., on brief), for respondent-appellee.

Before FRIENDLY, Chief Judge, and SMITH and OAKES, Circuit Judges.

OAKES, Circuit Judge:

George Saltys appeals from Judge Clarie's denial of his habeas corpus petition, raising significant questions regarding the role of counsel at pretrial identification proceedings and the conduct of such proceedings. We hold that petitioner did not receive adequate representation at trial, and we grant the petition.

In May 1968 petitioner was convicted by a state jury on a charge of robbing a West Hartford, Connecticut, drugstore on February 7, 1968.[1] Three people observed the robbery: Jim Polowitz, a stock clerk, who testified that he saw one robber's face for about 20 seconds before he was forced to lie on the floor and identified petitioner as the culprit in court; Richard O'Brien, a friend of Polowitz's, who testified that he "caught a glimpse" of that robber's face for 10–30 seconds and also identified petitioner in court; and William Doria, a pharmacist, who, despite approximately the same time for observation, was unable to make a positive identification. None of the men saw the face of the second robber. The robber whose face was seen wore a coat with a turned-up collar and a hat with a turned-down brim.

On the day after the robbery the process of trying to identify the bandits began. Polowitz and O'Brien examined photographs in the West Hartford police station on two occasions but made no identification. The record does not indicate whether petitioner's picture was one of those displayed on those occasions. In late February petitioner and three others were arrested and charged with an unrelated Hartford robbery, a charge that was subsequently dismissed. Keys and a jacket belonging to Polowitz and taken from him during the West Hartford robbery were recovered from two of the men arrested with Saltys. On March 12 the Hartford police told Polowitz that his property had been recovered, and Polowitz told O'Brien about the retrieval. On the same day, Polo-

---

1. Sentenced to a term of 4 to 7 years, he was paroled in January 1972.

witz, aware that the police suspected a particular person, examined four to six police "mugshots"[2] at the Hartford station, picked out a photograph of petitioner as "resembling" or "looking like" the robber, and subsequently identified his coat and keys.

On the following day, March 13, the effort to identify the robber positively was renewed, and it is from this point that questions regarding the propriety of the identification procedures become especially acute. O'Brien and Polowitz looked at a spread of four to six "mugshots," from which each man independently identified petitioner as a man *resembling* the robber. *Immediately after* the photographic identification the witnesses were led through the Hartford "bullpen," the area where arrestees are held pending arraignment. At that time, Polowitz testified, he knew that the police wanted him to identify someone, and he was looking for the man whom he had just identified from the photographs. As might be guessed, petitioner was among the 30 or so men in the bullpen,[3] and both men then identified him *positively* as the robber. In the court below, Polowitz said he was not "100 percent sure" of his identification until he saw petitioner in the bullpen. Polowitz, who is 5 feet 7 inches tall, had described the robber as one of the same height; petitioner is 5 feet 11 inches tall and was seated in the bullpen when Polowitz saw him. This bullpen "walk-through" was done without notice to petitioner or to petitioner's lawyer, who was representing petitioner that

very day at his arraignment on the unrelated Hartford robbery charge.

On the same day (March 13), after the day's first photographic identification and the bullpen identification, the witnesses again looked at petitioner's photograph, following which they again made two other identifications, one in the bullpen and one in "a glass-enclosed cage with two other guys," the detention area for the Hartford Circuit Court. Apparently suspecting that he was under observation, petitioner unsuccessfully tried to get the attention of his Hartford lawyer, who was in an adjoining room unaware of the identification in progress.

At trial, petitioner presented an alibi defense and testified on his own behalf. The pretrial and in-court identifications were introduced as substantive evidence and were, on the record before us, the only pieces of evidence connecting petitioner to the crime, a fact pattern that distinguishes this case from most other identification cases reviewed by this court, *see, e. g.,* United States v. Harrison, 460 F.2d 270 (2d Cir., 1972), and makes the identification procedure even more important than it is inherently.[4] Petitioner's appointed counsel did not object, before or at trial, to the in-court identifications, relying instead on cross-examination to show the unreliability of the identification. In doing so, petitioner's counsel brought out many more facts as to the pretrial identifications. Petitioner and his counsel, according to petitioner, never discussed that trial decision. On the basis of this failure to object the State argues that petitioner

---

2. At the federal habeas corpus hearing, O'Brien testified that there were about 10 photographs in this series and in the series he looked at the next day.

3. Petitioner, who is white, contends that, of the 30 men, only three others were white, and even roughly similar in age and appearance. The Hartford police and the identifying witnesses contend that half the group was composed of whites.

4. One commentator has properly cautioned " . . . that no class of evidence is less to be relied upon than evidence of

identity." Sobel, Identification: Legal and Practical Problems, 166 N.Y.L.J. No. 122, at 3 (Dec. 28, 1971) (one part of a ten-part article by the Hon. Nathan R. Sobel, Surrogate of Kings County, New York, appearing in the New York Law Journal between Dec. 20, 1971, and Jan. 4, 1972, hereinafter cited as Sobel, with appropriate references). This article has been reprinted sub nom., Assailing the Impermissible Suggestion: Evolving Limitations on the Abuse of Pre-Trial Criminal Investigation Methods, 38 Brooklyn L.Rev. 261 (1971).

waived any complaints regarding the manner in which he was identified. Counsel also refrained, over petitioner's objection, from eliciting testimony that Polowitz's coat and keys had been recovered from someone other than petitioner, apparently on the theory that any mention of Saltys' arrest for another robbery would prejudice him.

Although the district court opinion indicates that no direct appeal from the judgment of conviction was taken, petitioner and his state habeas corpus lawyer (who was not his trial lawyer) testified at that habeas corpus proceeding that an appeal was taken and denied. In any event, his state habeas corpus petition was denied, and this federal action was instituted in mid-1970.

■ Petitioner is foreclosed by the law of this circuit from asserting a right to counsel at the pre-indictment, pre-arrest photographic identification sessions, a conclusion that follows from our decision denying the right to counsel at even later photographic displays. United States ex rel. Johnson v. New York Department of Correctional Services, 461 F.2d 956 (2d Cir., 1972) (no right to counsel at post-indictment, pretrial display); *see* United States v. Fernandez, 456 F.2d 638, 641 n. 1 (2d Cir. 1972); United States v. Mojica, 442 F. 2d 920, 921 (2d Cir. 1971); United States v. Fitzpatrick, 437 F.2d 19, 25–26 (2d Cir. 1970); United States v. Bennett, 409 F.2d 888, 898–900 (2d Cir.), cert. denied sub nom. Jessup v. United States, 396 U.S. 852, 90 S.Ct. 117, 24 L.Ed.2d 101 (1969) (post-arrest, pre-indictment display). We adhere to the position of *Bennett.*[5]

But whether petitioner had a constitutional right to counsel at the bullpen walk-through and the later courthouse viewing of him by the witnesses is an entirely different and more subtle question. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), as modified by Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), furnish guidelines. *Wade* and *Gilbert* established the right to counsel at the "critical stage" of a formal, post-indictment lineup. A plurality in *Kirby* held, however, that the right attaches only "at or after the initiation of adversary judicial criminal proceedings —whether by way of formal charge, preliminary hearing, indictment, information or arraignment." 92 S.Ct. at 1882. The Chief Justice was of the view that the right attaches "as soon as criminal charges are formally made against an accused . . . ." 92 S.Ct. at 1883. Here the viewings were before proceedings were instituted in respect to the crime testified to by the identification witnesses, but while petitioner was in custody awaiting arraignment on another crime and after counsel had been retained to represent him at the arraignment. Thus it is arguable that *Wade* and *Gilbert,* still would require counsel at the viewings here, even with the limitations of *Kirby,* especially in the light of this circuit's own cases such as United States v. Roth, 430 F.2d 1137, 1140 (2d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 633 (1971) (*Wade* applicable to informal, as well as formal, post-indictment confrontation arranged by Government).

*Wade,* it will be recalled, said with respect to the right to counsel:

In sum, the principle of Powell v. Alabama [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158] and succeeding cases requires that we scrutinize *any* pretrial

---

5. Even assuming, which we do, that what was here involved was a post-arrest situation, albeit an arrest for an unrelated charge, no right to counsel attaches. United States v. Bennett, 409 F.2d 888, 898–900 (2d Cir.), cert. denied, 396 U.S. 852, 90 S.Ct. 117, 24 L.Ed.2d 101 (1969). Most circuits agree with this position.

United States ex rel. Johnson v. New York Dep't of Correctional Services, *supra. Contra,* United States v. Ash, 461 F. 2d 92 (D.C.Cir., 1972) (en banc; 5–4 decision), cert. granted, 407 U.S. 909, 92 S.Ct. 2436, 32 L.Ed.2d 682 (1972); *see* Sobel, 166 N.Y.L.J. No. 122, at 3 (Dec. 28, 1971).

confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.

388 U.S. at 227, 87 S.Ct. at 1932 (emphasis original). "Potential substantial prejudice," it may be argued, inhered in the confrontation of Saltys. The witnesses had just picked out petitioner from a photograph as a man "resembling" the robber, and Polowitz went to the bullpen looking specifically for petitioner and aware that the man suspected by the police was there. Petitioner was seated, so Polowitz could not measure his height against the robber's, and the racial composition of the group in the bullpen may have unduly distinguished petitioner.

■ As we said in *Roth, supra,* 430 F.2d at 1141 (citation omitted), "the more informal the viewing procedure the greater the possibility of subtle suggestiveness." The procedures in this case were most informal, heightening the possibility of suggestiveness and making a faithful reconstruction of what happened at trial "difficult or even impossible." *Id.* This particular confrontation was, as we have said, at a "critical stage," at least in the sense that petitioner was suspected of complicity in the crime, was in custody albeit for another crime, and had been identified in photographs by the two witnesses who then viewed him in person.[6] The identification proceedings were, therefore, arguably at a point "where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *Wade, supra,* 388 U.S. at 224, 87 S.Ct. at 1931.

If *Wade* applies, it flows also from Gilbert v. California, 388 U.S. 263, 272–273, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178 (1967), that the witnesses' testimony that they identified petitioner in the bullpen and in the arraignment courtroom should have been excluded automatically at trial, without inquiring whether that testimony had an independent source. As the Court put it:

> That testimony is the direct result of the illegal lineup "come at by exploitation of [the primary] illegality." Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441. The State is therefore not entitled to an opportunity to show that that testimony had an independent source. Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup.

*Ibid.* Were this error, it alone would be enough, absent waiver, to require reversal of petitioner's conviction under *Gilbert.* The district court held, however, that petitioner, by failing to object at trial, waived all constitutional arguments regarding his identification.[7]

Under the classic test articulated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (assistance of counsel), waiver of a constitutional right consists of action

6. Whether the arrest were for the crime in dispute or, as here, for a different crime is relevant to the "critical stage" question. In either case a person is in custody, and there is no reason for the police to use an informal and suggestive procedure without counsel when a proper one with counsel could be arranged. *Cf.* Stovall v. Denno, 388 U.S. 293, 87 S.Ct.

1967, 18 L.Ed.2d 1199 (1967) (one-person "showup" usable only in narrow circumstances).

7. Petitioner's trial counsel did not testify at either the state or the federal habeas corpus hearing, so we have no evidence of his reasons for failing to object. We know only that he and petitioner did not discuss the matter.

amounting to "an intentional relinquishment or abandonment of a known right or privilege." Since *Johnson* the Supreme Court has consistently declared that courts should not find waiver easily, particularly in criminal cases involving alleged constitutional violations. *Compare* Glasser v. United States, 315 U.S. 60, 70–71, 62 S.Ct. 457, 86 L.Ed. 680 (1942), with Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). *See also* United States ex rel. Bruno v. Herold, 408 F.2d 125, 129 (2d Cir. 1969) (2–1 decision), cert denied, 397 U.S. 957, 90 S.Ct. 947, 25 L.Ed.2d 141 (1970) (Fay inapplicable to matters of "trial strategy"); Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1109–12 (1970).

■ But we need not reach the waiver questions here, for on the basis of the record before us we take the view that Saltys was denied either effective or reasonable assistance of counsel. While the requirements for finding inadequacy of counsel are stringent, *e. g.*, United States ex rel. Marcelin v. Mancusi, 462 F.2d 36 (2d Cir., 1972), here we have a case where not just the key but the only evidence against the defendant connecting him with the crime was identification testimony, and counsel failed to take even the rudimentary step of seeking at a suppression hearing in the absence of the jury to explore the evidence underlying the proposed in-court identification evidence. This was an available procedure in Connecticut at the time; it is described as "proper procedure" in State v. Duffen, 160 Conn. 77, 273 A.2d 863, 865 (1970).[8]

Moreover, petitioner's counsel never discussed the possibility of objecting to the admission of the identification testimony. Counsel apparently made no effort to inquire about the circumstances surrounding the photographic, bullpen, and pretrial courtroom identifications. Although apparently petitioner did not

mention to trial counsel the absence of a lawyer at the bullpen and courtroom identifications, he was aware of the procedures only as they were terminating, and his state testimony indicates that he felt that it was too late to correct the damage that had already been done. In any event counsel should have inquired, since, irrespective of the limitations *Kirby* has placed on *Wade*, there was plainly a highly viable *Wade* and *Gilbert* argument available to him, a line of defense that prior to *Kirby* might have been impregnable. As Mr. Justice Brennan pointed out in his *Kirby* dissent, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, 13 of 18 states had applied *Wade* and *Gilbert* to pre-indictment confrontations for identification and *all* (*i. e.*, 8) United States Courts of Appeals facing the question had done so, including our own. *See* United States v. Ayers, 426 F.2d 524, 526–527 (2d Cir.), cert. denied, 400 U.S. 842, 91 S.Ct. 85, 27 L.Ed.2d 78 (1970). It may be that after *Kirby* the objection might have been unavailing, but that does not take away from the proposition that in all probability a timely objection on *Wade-Gilbert* grounds would have prevailed and petitioner then been acquitted, especially when one realizes that in Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), following *Wade*, the accused was confronted after arrest and before being formally charged. *See* Brennan, J., dissenting in Kirby v. Illinois, *supra,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. Our point is that counsel's errors of omission and commission *at the time of trial* resulted in Saltys' conviction, albeit the same course of action taken today could not be wholly faulted. Even today, however, his omission to request a suppression hearing would be a serious one.

It is true that counsel and petitioner did agree, after discussion, not to bring out evidence disassociating petitioner from the inculpatory coat and keys.

---

8. We have pointed out the desirability of conducting a pretrial suppression hearing in United State ex rel. Phipps v. Follette,

428 F.2d 912, 913 & n. 1 (2d Cir.), cert. denied, 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970).

But this decision was related to the question of identification only in the limited and for us irrelevant sense that Polowitz was told about their recovery and asked to view photographs on the same day.[9]

We cannot see what conceivable trial strategy was followed in, or what tactical advantage could obtain to Saltys from, failing to object—we might add with vigor—on *Wade* and *Gilbert* grounds to the admission of the identification testimony. This may have stemmed from the failure, as we say, to have explored the identification question at a suppression hearing. It may have stemmed from a lack of knowledge of *Wade* and *Gilbert*. By virtue of what we consider "woefully inadequate," United States v. Currier, 405 F.2d 1039, 1043 (2d Cir.), cert. denied, 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228 (1969), representation, key objectionable evidence, without which Saltys in all probability could not have been convicted, was admitted without objection. It was then strengthened, or at least expanded on, by an ill-advised cross-examination. With resultant prejudice, counsel's omissions here justify reversal. *Cf.* People v. Ibarra, 60 Cal.2d 460, 34 Cal.Rptr. 863, 386 P.2d 487 (1963) (en banc) (Traynor, *J.*).

Although the record indicates that there is probably no evidence on which petitioner can now be retried, the State must be given an opportunity to retry him constitutionally. This is true even though retrial is doubtful in any event because Saltys has served his sentence and is on parole.

The ruling below is reversed, with directions to issue the writ unless Saltys is retried within 60 days from the issuance of our mandate or such further reasonable time as the district court, for good cause shown, may allow. We need not examine the other substantial questions of the admissibility of photographic identification evidence presented in the case.

Judgment in accordance with opinion.

FRIENDLY, Chief Judge (dissenting):

If this appeal had been decided before Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), I could have accepted the result reached by the majority. However, that case[1] disapproved the dicta in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), with respect to a right to counsel at a lineup before the criminal prosecution had begun.[2] Recognizing that the Sixth Amendment guarantee of the right to counsel attaches only when a "criminal prosecution" has commenced, the Court elucidated when that stage had been reached. It said, with unmistakable clarity, "that a person's Sixth and Fourteenth Amend-

---

9. An example of the confusion in one judge's mind regarding these two distinct issues can be seen in the following question put to petitioner by the state habeas corpus judge:

Q. So you were objecting to the introduction of these coat and keys as evidence linking you with the identification of the accused as being the bandit?

A. Yes. That's what I wanted brought out.

1. Although the majority opinion here, like the dissent in *Kirby*, refers to Mr. Justice Stewart's opinion, in which Chief Justice Burger, Justice Blackmun, and Justice Rehnquist joined, as a "plurality opinion," which is technically correct, the negative inference apparently sought to

be drawn from that phrase seems unwarranted, at least as applied to this case. I read Mr. Justice Powell's statement that he "would not extend the *Wade-Gilbert per se* exclusionary rule" as indicating a desire to keep open the issue of *per se* exclusion of testimony concerning lineups without counsel *after* the beginning of the criminal prosecution, and not at all as favoring such exclusion in the case of such lineups before the prosecution commenced.

2. In *Wade* the lineup was conducted 49 days after the indictment had been filed and 15 days after counsel was appointed. In *Gilbert* the lineup was held 16 days after the indictment and appointment of counsel.

ment right to counsel attaches only at or after the time that *adversary judicial proceedings* have been initiated against him," 406 U.S. at 688, 92 S.Ct. at 1881 (emphasis supplied). After citing the leading right to counsel decisions, the Court said again that all of them "have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." 406 U.S. at 689, 92 S.Ct. at 1882. None of the steps mentioned by the Court had occurred to Saltys with respect to the crime here at issue, and therefore his right to counsel had thus not attached with respect to this crime.

The majority endeavors to escape the clear direction of *Kirby* by saying that because Saltys was awaiting arraignment on another robbery charge and had either retained or been assigned counsel to that end, "it is arguable that *Wade* and *Gilbert* still would require counsel at the viewings here, even with the limitations of *Kirby*, especially in the light of this circuit's own cases such as United States v. Roth, 430 F.2d 1137, 1140 (2d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 633 (1971) . . . ." While *Roth* held that a pretrial corporeal identification which is something less than a formal lineup can violate the *Wade-Gilbert* principle, that decision's bearing on the issue here escapes me since the viewing there was long after the indictment. On the question of whether custody on one charge triggers the right to counsel for every other charge, it is necessary to distinguish, as Mr. Justice Stewart did in *Kirby*, between problems arising under the self-incrimination clause of the Fifth Amendment and the assistance of counsel clause of the Sixth. When a person is in custody on one charge, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), would rule out admissions with respect to another, in the absence of the appropriate warnings, be-

cause of the effect of custody of any sort on the will of the suspect. See Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). But the Sixth Amendment guarantee of counsel is to assist in defending against the crime charged, not against some other not yet charged. See United States v. Davis, 399 F.2d 948, 952 (2 Cir.), cert. denied, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449 (1968). To be sure, the fact that Saltys had a lawyer on the other robbery charge would have made it easy to have the attorney present at the walkthrough. But the narrowing of *Wade* and *Gilbert* by *Kirby* did not rest on the difficulty in getting a lawyer at all pre-prosecution lineups [3] but rather on an interpretation of the language of the Sixth Amendment. Beyond this, the record does not inform us whether the arrest that had placed Saltys in the bullpen had advanced to any such point of time as Mr. Justice Stewart described; we know only that he was awaiting an arraignment that had not yet occurred. Thus, in light of *Kirby*, I see little basis for thinking that a *Wade* and *Gilbert* challenge to the bullpen identification testimony would today be susceptible of successful argument, and no basis for condemning counsel for not arguing it.

The inapplicability of *Wade* and *Gilbert* still leaves the question whether the identification of Saltys was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The majority conveys the impression that it was, without ever explaining exactly why. There is no indication that the array of photographs displayed to Polowitz and O'Brien, was unfair in any way. The fact that the witnesses were "aware that the police suspected a particular person" is utterly lacking in significance; a victim almost always knows this when he is asked to inspect a group of photographs. Neither do I see any-

---

3. Difficulty did indeed exist in some such situations, notably night-time arrests

shortly after the crime, but by no means in all.

thing impermissibly suggestive in the police following this up by having Polowitz and O'Brien view the 30 men in the bullpen; this was a greater safeguard than in *Simmons* where the witnesses proceeded directly from photographic to in-court identification. If the group contained so few whites as to enhance the likelihood of identification of Saltys, as he asserts but the police and the witnesses deny, see fn. 3 to the majority opinion, this had to be developed by testimony or cross-examination. I see no indication that counsel failed to do this; the chance that, absent the *Wade* and *Gilbert* dicta, the court would, after a pretrial hearing, have suppressed the identifications on due process grounds is altogether too remote to support a finding of incompetency of counsel. Absent a violation of procedural rights accorded to Saltys by the Constitution, "the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecutor's case is a matter for the jury." Foster v. California, 394 U.S. 440, 442 n. 2, 89 S.Ct. 1127, 1128, 22 L. Ed.2d 411 (1969).

The case is unusual in that if counsel had objected to testimony concerning the bullpen identification, he would quite probably have been sustained on the basis of what was then thought to be the law, see Justice Brennan's dissenting opinion in *Kirby*, 406 U.S. at 704 n. 14, 92 S.Ct. 1877, 32 L.Ed.2d 411, although, as we now know, wrongly so. I cannot escape the impression that this is what underlies the decision here. But the statutory provision on Federal habeas corpus for state prisoners, 28 U.S.C. § 2254(a), authorizes us to direct Saltys' release only if "he is in custody in violation of the Constitution or laws or treaties of the United States." Under the Court's most recent pronouncement he is not. The contrary position of the majority, with the frequent citation of the

*Wade* and *Gilbert* dicta, fails to recognize the force of Kirby v. Illinois.[4] For that reason I must dissent; I would affirm the order dismissing the petition without reaching the effect of the failure to make objection.

---

4. This case is a peculiarly inappropriate one for creating confusion as to a possible continuing vitality of the *Wade* and *Gilbert* dicta in regard to pre-prosecution lineups since Saltys served over three years of his four to seven year sentence and is currently free on parole.