**Rayford PEARSON, Petitioner,**

v.

**Harold J. SMITH, Superintendent, Attica Correctional Facility and The Attorney General of The State of New York, Respondents.**

**No. CIV–79–656.**

United States District Court,
W. D. New York.

Nov. 6, 1980.

Rayford Pearson, pro se.

Robert Abrams, Atty. Gen., Albany, N. Y., for respondents.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

This is a *pro se* petition for a writ of habeas corpus. Petitioner is currently serving an 8⅓ years–to–life sentence for the possession and sale of narcotics, imposed October 7, 1975 by the Honorable Leon N. Armer, Erie County Supreme Court, after a hearing held August 4 and September 2, 1975 and a trial before Justice Armer and a jury commencing September 3 and concluding (with several interruptions) September 17, 1975, on which date the jury returned a verdict of guilty of all crimes charged. The action was timely appealed to the New York State Supreme Court, Appellate Division, Fourth Department, where the judgment of conviction was affirmed without opinion July 12, 1977. Petitioner swears and respondent admits that leave to appeal was denied August 25, 1977 by Judge Jasen of the New York State Court of Appeals; I will assume that such occurred although no such indication appears in the state court records filed herein at my order.

In this action petitioner raises a number of what he alleges to be constitutional claims. The last such claim listed in his petition is that petitioner was deprived of his right, secured by the Sixth Amendment to the United States Constitution and applied to the states through the Fourteenth Amendment, to the assistance of counsel at all critical stages in the proceedings by which he was convicted. This argument is well–taken and requires petitioner's release from custody unless he is constitutionally retried commencing not later than the sixti-eth day following the entry of this Memorandum and Order. Accordingly, I need not and expressly decline to address either the substance of any of petitioner's other claims or whether petitioner has exhausted his state remedies with respect thereto. *See, e. g., Johnson v. Metz,* 609 F.2d 1052 (2d Cir. 1979).

Petitioner's claim under the Sixth Amendment, which was expressly raised (in Sixth Amendment garb) before the trial judge and on the appeal to the Appellate Division, is that he was without counsel at the time he was arrested March 25, 1975. Petitioner argues that on the facts of this case such arrest was a "critical stage" of his case at which counsel was required and that, because he was then without counsel, certain testimony inseparable from an eye-witness identification at that time could not constitutionally be admitted at trial. Although his argument is novel, on the unusual facts of the instant case I conclude that it is meritorious.

Petitioner was convicted for selling a quantity of heroin to Erie County (N.Y.) Sheriff's Department Undercover Officer Jerry Leonard late in the evening of October 4, 1974. Officer Leonard testified at trial that on that evening he had met petitioner while Leonard had been patrolling in his personal (unmarked) automobile and that, while in the course of driving with petitioner seated in the back seat of his car and an informant (one Calvin Feagins) seated in the front passenger seat, Leonard agreed to purchase heroin from petitioner. According to Leonard, petitioner, after agreeing to sell the heroin, alighted from the car and walked away. Shortly thereafter, two packages that later were shown to contain heroin were delivered to Leonard by a 13–year old boy. Leonard testified that during the course of the transaction he saw petitioner's face, illuminated by a street light in the vicinity of where petitioner alighted from the car. Officer Leonard further testified that when he saw petitioner he recognized him as someone whom he had seen several times in the area he was patrolling; he did not know his name

at the time of the alleged sale but learned his name prior to writing up the police report on the event that evening.

In a *Wade* hearing held shortly prior to trial, Leonard testified that after the encounter with Pearson on the evening of October 4th he had seen a "mug shot" photograph of Pearson and had identified him as the seller of the narcotics in testimony before the grand jury in November 1974, which thereupon indicted Pearson for the crime. Pearson was not then in custody. Leonard's next encounter with Pearson occurred on or about March 26, 1975, when Leonard's supervisor, one Sergeant Pecoraro, informed Leonard that the Sheriff's Office had information relating to Pearson's whereabouts and requested that Leonard accompany Pecoraro and certain other officers to participate in the arrest. Leonard was present at the rear of the residence where Pearson was arrested, but did not actually arrest Pearson or see him until after Pearson had been taken into custody, removed from the residence and placed in the back of a police car. Leonard then entered the front seat of the police car and observed Pearson; Leonard then departed the car and proceeded in another vehicle to the Sheriff's office. Pearson, of course, did not have counsel present at this time.

This confrontation took place nearly six months after the commission of the crime charged. The Sheriff was not merely searching for suspects matching a description, as in a search of a neighborhood immediately after a robbery, where immediate "showup" would be needed to release innocent persons and to allow the search to continue without undue expenditure of time. The position of the Sheriff was clearly that Pearson was the guilty party; it had presented a charge against him to the grand jury and procured an indictment. There were no exigent circumstances requiring Leonard to view or otherwise have to do with Pearson then in the back of the police car. The arrest was made and Pearson was in custody; Leonard was not injured, aged, ill or otherwise in a situation such that it could reasonably be feared that he would be unable to identify petitioner at a later time. Finally, Leonard was not actively performing a function as an officer at the time he viewed Pearson; his position was solely that of a witness whose identification of the criminal would be essential to convict Pearson, and whose opportunity to see the criminal and the reliability of the resulting identification should have been anticipated to be (and was) challenged at trial.

Justice Armer found, in a written opinion, that Leonard's identification of Pearson at the *Wade* hearing had no separate basis from this viewing at the time of arrest, but permitted the identification at the hearing because he found no impropriety in this viewing. The prosecutor made no attempt to show that Leonard's in–court identification of Pearson had a basis independent of the *Wade* hearing or of the arrest.

■ For more than a decade, it has been an established principle of constitutional law that, once adversary criminal proceedings have been started against someone, he has a right to have counsel present at all "critical stages" of the proceedings (*see, e. g., Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)) and that, although showing of photographs to witnesses of a crime is not such a critical stage (*United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973)), proceedings in which the defendant is viewed by witnesses to the crime to determine whether they could identify the defendant are of such nature. *See, e. g., Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Cannon v. State of Alabama,* 558 F.2d 1211, 1217–18 (5th Cir. 1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Saltys v. Adams,* 465 F.2d 1023, 1025–28 (2d Cir. 1972) (dictum); *United States v. Roth,* 430 F.2d 1137, 1140–41 (2d Cir. 1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 633 (1971). This principle does not attach only to formal stationhouse "lineups"; one–man "show–ups" and, indeed, any other proce-

dure conducted after the commencement of adversary criminal judicial proceedings wherein a defendant is viewed by witnesses require the presence of counsel, as there exists the same potential for "irreparable misidentification." *See, e. g., Cannon v. State of Alabama, supra; Saltys v. Adams, supra; United States v. Roth, supra.*

■ Justice Armer cited two New York cases in support of his holding that petitioner's Sixth Amendment rights had not been infringed—namely, *People v. Morales,* 37 N.Y.2d 262, 372 N.Y.S.2d 25, 333 N.E.2d 339 (1975), and *People v. Blake,* 35 N.Y.2d 331, 361 N.Y.S.2d 881, 320 N.E.2d 625 (1974). These cases involve identifications *preceding* the filing of charges and/or the commencement of adversary proceedings and therefore not subject to the requirements of *United States v. Wade. See, Kirby v. Illinois,* 406 U.S. 682, 688, 690, 92 S.Ct. 1877, 1881–1882, 32 L.Ed.2d 411 (1972). In addition, the court in *Morales* noted expressly that the purpose of the stationhouse viewing therein was only to *assure* that the person arrested was the suspect from whom an undercover officer had purchased narcotics a few *hours* before, and had then identified from a closed car almost immediately after the purchase. The prompt viewing in *Morales* served the salutary purposes of assuring that the wrong man had not been arrested by mistake and permitting a renewed search for the guilty person. No such important interests were served herein. Therefore, I see no reason why the reasoning of *Wade, et al.,* does not come into play in the factual matrix presented herein and require the presence of counsel. When Leonard went to the police car to look at the petitioner, it was the precise functional equivalent of a "show–up," except that Leonard was both the arranger of and the witness present at the "show–up."

Moreover, requiring Leonard to wait until after counsel for Pearson had arrived would not have been a pointless gesture; counsel could at minimum have noted the dangers of misidentification involved in a one–person "show–up" and suggested that a less suggestive lineup be used instead; it

is probable that he could have made other contributions to the fairness of the procedure used.

Finally, this holding should not, the suggestions of the District Attorney before the state courts to the contrary notwithstanding, have any substantial effect on normal police practices. Leonard did not encounter petitioner during normal patrol, or in the actual course of the arrest or otherwise during ordinary police work. He went out of his way to get a good look at petitioner. It is a tenable theory that this was done deliberately to bolster an otherwise weak identification; even if it was not done for this purpose, it had such effect. It would not have been a significant burden for him to have waited; permitting him to testify at trial after his failure to do so violated a fundamental constitutional right of petitioner, and such failure cannot be considered harmless constitutional error within the meaning of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), inasmuch as his identification of petitioner at the *Wade* hearing could not, according to Justice Armer, be separated from the viewing at the time of arrest and no attempt was made to separate the trial identification from that at the *Wade* hearing. Justice Armer's holding is also the law of the case on the issue of the independence of the identification.

For these reasons Leonard's identification of defendant at trial was constitutionally forbidden. Such identification was the only evidence connecting defendant to the crime; therefore, his conviction cannot stand. Respondent is accordingly hereby ORDERED to release petitioner from custody unless a retrial of petitioner for the offenses for which he currently is imprisoned shall have commenced not later than the sixtieth day following the entry of this Memorandum and Order, such retrial to be without use of identification testimony by Officer Leonard unless the state shall have shown beyond a reasonable doubt that there is a basis for such identification independent of the March 1975 arrest, the *Wade* hearing, and the September 1975 trial herein.